IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> APPLE INC., HIGH TECH COMPUTER CORP., a/k/a HTC CORP., HTC (B.V.I.), HTC AMERICA, INC., EXEDEA, INC., RESEARCH IN MOTION LTD., and RESEARCH IN MOTION CORPORATION, <br><br> *Defendants*. | Civil Action No. _____ <br><br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff St. Clair Intellectual Property Consultants, Inc. ("St. Clair"), for its Complaint against Defendants Apple Inc. ("Apple"), High Tech Computer Corp., a/k/a HTC Corp. ("HTC Corp."), HTC (B.V.I.) Corp. ("HTC BVI"), HTC America, Inc. ("HTC America"), and Exedea, Inc. ("Exedea") (collectively "HTC"); and Research in Motion Limited and Research in Motion Corporation (collectively "RIM"), (collectively "Defendants"), states and alleges as follows:

**THE PARTIES**

1. Plaintiff St. Clair is a Michigan corporation having its principal place of business at 16845 Kercheval Avenue, Suite No. Two, Grosse Pointe, Michigan 48230.

2. Upon information and belief, Defendant Apple is a California corporation with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.

3. Upon information and belief, Defendant HTC Corp. is a corporation organized and existing under the laws of Taiwan with its principal place of business at 23 Xinghau Road,

Taoyuan 330, Taiwan, Republic of China.  Upon information and belief, Defendant HTC Corp. is engaged in the design, manufacture, importation into the United States, and sale after importation of mobile communication devices and services.

4. Upon information and belief, Defendant HTC BVI is a wholly owned subsidiary of Defendant HTC Corp. and is incorporated under the laws of the British Virgin Islands with its principal place of business at 3F, Omar Hodge Building, Wickhams Cay I, P.O. Box 362, Road Town, Tortola, British Virgin Islands.  Upon information and belief, Defendant HTC BVI is engaged in global investing and related activities on behalf of its parent, Defendant HTC Corp. and is itself a parent company of additional Defendants.

5. Upon information and belief, Defendant HTC America is a wholly-owned subsidiary of Defendant HTC BVI and is incorporated under the laws of Texas, with its principal place of business at 13920 SE Eastgate Way, Suite 500, Bellevue, Washington.  Upon information and belief, Defendant HTC America performs several services to support the importation and sale of mobile communication devices provided by HTC Corp. into and within the United States, including marketing, repair, and after-sale services of mobile communication devices.

**6.** Upon information and belief, Defendant Exedea is a wholly-owned subsidiary of Defendant HTC BVI and is incorporated under the laws of the state of Texas with its principal place of business at 5950 Corporate Drive, Houston, Texas 77036.  Upon information and belief, Defendant Exedea imports mobile communication devices produced by HTC Corp. into the United States and distributes and sells such mobile communication devices after their importation.

7. Defendant Research in Motion Ltd., is a Canadian corporation organized and existing under the laws of Canada with its principal place of business at 295 Phillip Street, Waterloo, Ontario, Canada N2L 3W8.

8. Defendant Research in Motion Corporation is a corporation organized and existing under the laws of Delaware with its principal place of business at 122 West John Carpenter Parkway, Suite 430, Irving, Texas 75039.

## JURISDICTION AND VENUE

9. This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code, specifically §§ 271 and 281-285. This Court has subject matter jurisdiction under Title 28 United States Code §§ 1331 and 1338(a).

10. Personal jurisdiction over Defendants comports with the United States Constitution and 10 Del. C. § 3104 of the Delaware Code because Defendants have committed and continue to commit acts of patent infringement in this district as alleged in this Complaint and additionally, with respect to Research in Motion Corporation, because it is a citizen of this state.

11. Venue is properly within the district under Title 28 United States Code §§ 1391(b) and (c) and 1400(b).

## BACKGROUND

12. St. Clair owns all of the rights and interests in United States Patent Nos. 5,630,163 (the "'163 Patent"); 5,710,929 (the "'929 Patent"); 5,758,175 (the "'175 Patent"); 5,892,959 (the "'959 Patent"); 6,079,025 (the "'025 Patent"); and 5,822,610 (the "'610 Patent") (collectively, the "Patents in Suit").

13. The '163 Patent entitled "Computer Having A Single Bus Supporting Multiple Bus Architectures Operating With Different Bus Parameters" was duly and legally issued by the United States Patent and Trademark Office on May 13, 1997, after full and fair examination. A copy of the '163 Patent is attached as Exhibit A.

14. The '929 Patent entitled "Multi-State Power Management For Computer Systems" was duly and legally issued by the United States Patent and Trademark Office on January 20, 1998, after full and fair examination. A copy of the '929 Patent is attached as Exhibit B.

15. The '175 Patent entitled "Multi-Mode Power Switching For Computer Systems" was duly and legally issued by the United States Patent and Trademark Office on May 26, 1998, after full and fair examination. A copy of the '175 Patent is attached as Exhibit C.

16. The '959 Patent entitled "Computer Activity Monitor Providing Idle Thread And Other Event Sensitive Clock And Power Control" was duly and legally issued by the United States Patent and Trademark Office on April 6, 1999, after full and fair examination. A copy of the '959 Patent is attached as Exhibit D.

17. The '025 Patent entitled "System And Method Of Computer Operating Mode Control For Power Consumption Reduction" was duly and legally issued by the United States Patent and Trademark Office on June 20, 2000, after full and fair examination. A copy of the '025 Patent is attached as Exhibit E.

18. The '610 Patent entitled "Multiple Functions From Single Chip/Multi-Chip Processors For Computers" was duly and legally issued by the United States Patent and Trademark Office on October 13, 1998, after full and fair examination. A copy of the '610 Patent is attached as Exhibit F.

19. Apple sells and distributes, including, upon information and belief, sales and distribution within the District of Delaware, smartphones and tablets that use Apple's mobile operating system called iOS, including but not limited to products sold under the names iPhone, iPad, and iPod Touch.

20. Upon information and belief, Apple was aware of the Patents in Suit as a result of at least the following facts:

   a. St. Clair offered to license the power management technology claimed in the '929, '959, '025 and '175 patents to Apple in a letter dated October 13, 2000 to Ms. Heinen, then Senior Vice President of Apple.

   b. The U.S. Patent Office repeatedly cited one or more of St. Clair's power management Patents in Suit or related patents as prior art against Apple's own patent applications, e.g., Apple's U.S. Patent No. 6,711,691; U.S. Patent No. 5,696,952; U.S. Patent No. 5,752,046; U.S. Patent No. 5,842,027; and Int'l Pub WO2008/085412.

   c. Apple had knowledge of the Patents in Suit through Apple's involvement in other litigation with St. Clair, including but not limited to *St. Clair v. Acer, Inc. et al.*, No. 09-354 (consolidated) (D. Del. filed May 15, 2009) ("Acer litigation").

   d. Apple has been involved in multiple other patent infringement suits involving power management technology wherein, upon information and belief, the Patents in Suit in this case were considered by Apple, including at least the following cases:

        i. *Optimum Power Solutions LLC v. Apple et al.,* EDTX 6:10-cv-00061;

        ii. *Apple v. High Tech Computer Corp.,* DE 1:10-cv-00544;

      iii. *Elonex v. Acer, Apple, et al.,* and

      iv. *Saxon Innovations v. Apple, et al.,* EDTX, 08-cv-265.

21. Upon information and belief, Apple became aware of the Patents in Suit as a result of Apple's due diligence and technology investigation relating to Apple's preparation for and implementation of Apple's transition to using Intel processors in their computer products.

22. Apple, upon information and belief, became aware of the Patents in Suit through Apple's involvement with entities that search for, buy, sell, broker, and/or license patents:

   a. Apple regularly communicates with, is a member/shareholder/partial owner of, and hires entities to search for, buy, sell, broker sales, and/or license patents that may relate to Apple's products;

   b. Apple actively participates in and communicates with such entities, as well as various patent aggregation entities, including but not limited to RPX; Allied Security Trust (AST); Intellectual Ventures (IV); Drakes Bay Company; Ocean Tomo; Transpacific IP; Technology, Patents and Licensing Inc. (TPL); InterDigital Communications Corp. (IDCC); Acacia; Quantum Intellectual Property Services (QUIPS); and yet2.com Inc.;

   c. Such entities are in the business of searching for, analyzing, purchasing, licensing, and/or selling patents and patent portfolios, and regularly find and disclose patents, such as the Patents in Suit, to companies such as Apple;

   d. St. Clair, directly and/or through JMP Securities, discussed selling and/or licensing the Patents in Suit to several entities that search for, buy, sell, broker, and/or license patents, including RPX; Intellectual Ventures (IV); Drakes Bay Company; Ocean Tomo; Transpacific IP; Technology, Patents and Licensing Inc. (TPL);

6

        InterDigital Communications Corp. (IDCC); Acacia; Quantum Intellectual Property Services (QUIPS); and yet2.com Inc.; and

    e.    Upon information and belief, one or more of such entities disclosed the Patents in Suit to Apple.

23. Upon information and belief, Apple had reason to believe that it was implementing technology in its smartphones and tablets that was related to and infringed the claimed technology of the Patents in Suit and Apple acted deliberately and/or objectively and subjectively reckless in moving forward with such technology. Apple encountered one or more of the Patents in Suit in a manner showing the relevance of the Patents in Suit to Apple's technology. For example, Apple was notified by letter from St. Clair of the Patents in Suit. In addition, Apple's interest in obtaining patents relating to the technology at issue in the Patents in Suit through patent brokers and Apple's own patent prosecution activities, which involved technology that Apple was implementing or considering implementing in its smartphones and tablets. Other instances in which Apple encountered the Patents in Suit include Apple's litigation activities in suits involving power management and Apple's due diligence/technology investigations, and other activities.

24. Given the totality of the circumstances, Apple obtained knowledge of the Patents in Suit in a manner in which, independently and collectively, constituted disregard of the Patents in Suit in making and selling smartphones and tablets that was at least objectively and subjectively reckless if not deliberate infringement of known patent rights. Upon information and belief, the substantial risk that Apple's smartphones and tablets implemented technology that would infringe the Patents in Suit was either known and/or was so obvious under the circumstances that the infringement risk should have been known.

25. HTC sells and distributes, including, upon information and belief, sales and distribution within the District of Delaware, smartphones and tablets that use the Android operating system, including but not limited to, Aria, Wildfire, Dream, Hero, Eris, Legend, EVO, Desire, Tattoo, Gratia, Bee, Merge, Paradise, Triumph, Tianyi, and Salsa.

26. Upon information and belief, HTC was aware of the Patents in Suit as a result of at least the following facts:

   a. HTC had knowledge of the Patents in Suit through HTC's involvement in other litigation with St. Clair, including but not limited to *St. Clair Intellectual Property Consultants Inc. v. HTC, et al.*, DDE 06-cv-404.

   b. HTC has been involved in multiple other patent infringement suits involving power management technology wherein, upon information and belief, the Patents in Suit in this case were considered by HTC, including at least the following cases:

      i. *Apple v. High Tech Computer Corp.,* DE 1:10-cv-00544; and

      ii. *Saxon Innovations v. High Tech Computer Corp.*, EDTX, 07-cv-491.

27. HTC, upon information and belief, became aware of the Patents in Suit through HTC's involvement with entities that search for, buy, sell, broker, and/or license patents:

   a. HTC regularly communicates with, is a member/shareholder/partial owner of, and hires entities to search for, buy, sell, broker sales, and/or license patents that may relate to HTC's products;

   b. HTC actively participates in and communicates with such entities, as well as various patent aggregation entities, including but not limited to RPX; Allied Security Trust (AST); Intellectual Ventures (IV); Drakes Bay Company; Ocean Tomo; Transpacific IP; Technology, Patents and Licensing Inc. (TPL); InterDigital

    Communications Corp. (IDCC); Acacia; Quantum Intellectual Property Services (QUIPS); and yet2.com Inc.;

 c. Such entities are in the business of searching for, analyzing, purchasing, licensing, and/or selling patents and patent portfolios, and regularly find and disclose patents, such as the Patents in Suit, to companies such as HTC;

 d. St. Clair, directly and/or through JMP Securities, discussed selling and/or licensing the Patents in Suit to several entities that search for, buy, sell, broker, and/or license patents, including RPX; Intellectual Ventures (IV); Drakes Bay Company; Ocean Tomo; Transpacific IP; Technology, Patents and Licensing Inc. (TPL); InterDigital Communications Corp. (IDCC); Acacia; Quantum Intellectual Property Services (QUIPS); and yet2.com Inc.; and

 e. Upon information and belief, one or more of such entities disclosed the Patents in Suit to HTC.

28.  Upon information and belief, HTC had reason to believe that it was implementing technology in its smartphones and tablets that was related to and infringed the claimed technology of the Patents in Suit and HTC acted deliberately and/or objectively and subjectively reckless in moving forward with such technology. HTC encountered one or more of the Patents in Suit in a manner showing the relevance of the Patents in Suit to HTC's technology. For example, HTC's interest in obtaining patents relating to the technology at issue in the Patents in Suit through patent brokers, which involved technology that HTC was implementing or considering implementing in its smartphones and tablets. Other instances in which HTC encountered the Patents in Suit include HTC's litigation activities in suits involving power management, as well as HTC's litigation activities involving St. Clair. For example, upon

information and belief, HTC obtained discovery of St. Clair's patent portfolio, which included the Patents in Suit, and HTC conducted due diligence relating to St. Clair's patent holdings stemming from HTC's involvement in other litigation involving St. Clair.

29. Given the totality of the circumstances, HTC obtained knowledge of the Patents in Suit in a manner in which, independently and collectively, constituted disregard of the Patents in Suit in making and selling smartphones and tablets that was at least objectively and subjectively reckless if not deliberate infringement of known patent rights. Upon information and belief, the substantial risk that HTC's smartphones and tablets implemented technology that would infringe the Patents in Suit was either known and/or was so obvious under the circumstances that the infringement risk should have been known.

30. RIM sells and distributes, including, upon information and belief, sales and distribution within the District of Delaware, smartphones and tablets, including but not limited to, Blackberry 7XXX, 87XX, 88XX, Bold, Curve, Style, Tour, Torch, Pearl, Storm, Storm2, and PlayBook.

31. Upon information and belief, RIM was aware of the Patents in Suit as a result of at least the following facts:

  a. RIM had knowledge of the Patents in Suit through RIM's involvement in other litigation with St. Clair, including but not limited to *St. Clair Intellectual Property Consultants Inc. v. Research in Motion et al.*, DDE 08-cv-371.

  b. RIM has been involved in multiple other patent infringement suits involving power management technology wherein, upon information and belief, the Patents in Suit in this case were considered by RIM, including at least the following cases:

    i. *Saxon Innovations v. Research in Motion et al.,* EDTX 07-cv-490*;* and

      ii. *WAIV Solutions LLC v. Research in Motion, et al.,* EDVA 09-cv-47.

32. RIM, upon information and belief, became aware of the Patents in Suit through RIM's involvement with entities that search for, buy, sell, broker, and/or license patents:

    a. RIM regularly communicates with, is a member/shareholder/partial owner of, and hires entities to search for, buy, sell, broker sales, and/or license patents that may relate to RIM's products;

    b. RIM actively participates in and communicates with such entities, as well as various patent aggregation entities, including but not limited to RPX; Allied Security Trust (AST); Intellectual Ventures (IV); Drakes Bay Company; Ocean Tomo; Transpacific IP; Technology, Patents and Licensing Inc. (TPL); InterDigital Communications Corp. (IDCC); Acacia; Quantum Intellectual Property Services (QUIPS); and yet2.com Inc.;

    c. Such entities are in the business of searching for, analyzing, purchasing, licensing, and/or selling patents and patent portfolios, and regularly find and disclose patents, such as the Patents in Suit, to companies such as RIM;

    d. St. Clair, directly and/or through JMP Securities, discussed selling and/or licensing the Patents in Suit to several entities that search for, buy, sell, broker, and/or license patents, including RPX; Intellectual Ventures (IV); Drakes Bay Company; Ocean Tomo; Transpacific IP; Technology, Patents and Licensing Inc. (TPL); InterDigital Communications Corp. (IDCC); Acacia; Quantum Intellectual Property Services (QUIPS); and yet2.com Inc.; and

    e. Upon information and belief, one or more of such entities disclosed the Patents in Suit to RIM.

33. Upon information and belief, RIM had reason to believe that it was implementing technology in its smartphones and tablets that was related to and infringed the claimed technology of the Patents in Suit and RIM acted deliberately and/or objectively and subjectively reckless in moving forward with such technology. RIM encountered one or more of the Patents in Suit in a manner showing the relevance of the Patents in Suit to RIM's technology. For example, RIM's interest in obtaining patents relating to the technology at issue in the Patents in Suit through patent brokers, which involved technology that RIM was implementing or considering implementing in its smartphones and tablets. Other instances in which RIM encountered the Patents in Suit include RIM's litigation activities in suits involving power management, as well as RIM's litigation activities involving St. Clair. For example, upon information and belief, RIM obtained discovery of St. Clair's patent portfolio, which included the Patents in Suit, and RIM conducted due diligence relating to St. Clair's patent holdings stemming from RIM's involvement in other litigation involving St. Clair.

34. Given the totality of the circumstances, RIM obtained knowledge of the Patents in Suit in a manner in which, independently and collectively, constituted disregard of the Patents in Suit in making and selling smartphones and tablets that was at least objectively and subjectively reckless if not deliberate infringement of known patent rights. Upon information and belief, the substantial risk that RIM's smartphones and tablets implemented technology that would infringe the Patents in Suit was either known and/or was so obvious under the circumstances that the infringement risk should have been known.

## COUNT I

### INFRINGEMENT OF THE '163 PATENT

35. Plaintiff incorporates each of the preceding paragraphs 1 - 34 as if fully set forth herein.

36. Defendants are infringing the '163 Patent literally, or under the doctrine of equivalents, by importing into the United States, and/or making, using, selling, or offering for sale in the United States, including the District of Delaware, products embodying the patented inventions claimed in the '163 Patent without authority, including but not limited to the products identified in preceding paragraphs 19, 25, and 30.

37. Upon information and belief, Defendants have willfully infringed the Patents in Suit by having deliberately engaged in their infringing conduct in knowing disregard of the Patents in Suit and have acted objectively and subjectively reckless in implementing technology in their products that they knew or should have reasonably known would infringe the Patents in Suit.

38. The infringement by Defendants of the '163 Patent has injured St. Clair and will cause St. Clair added irreparable injury and damage in the future unless Defendants are enjoined from infringing the '163 Patent.

## COUNT II

### INFRINGEMENT OF THE '929 PATENT

39. Plaintiff incorporates each of the preceding paragraphs 1 - 38 as if fully set forth herein.

40. Defendants are infringing the '929 Patent literally, or under the doctrine of equivalents, by importing into the United States, and/or making, using, selling, or offering for

sale in the United States, including the District of Delaware, products embodying the patented inventions claimed in the '929 Patent without authority, including but not limited to the products identified in preceding paragraphs 19, 25, and 30.

41. Upon information and belief, Defendants have willfully infringed the Patents in Suit by having deliberately engaged in their infringing conduct in knowing disregard of the Patents in Suit and have acted objectively and subjectively reckless in implementing technology in their products that they knew or should have reasonably known would infringe the Patents in Suit.

42. The infringement by Defendants of the '929 Patent has injured St. Clair and will cause St. Clair added irreparable injury and damage in the future unless Defendants are enjoined from infringing the '929 Patent.

## COUNT III

## INFRINGEMENT OF THE '175 PATENT

43. Plaintiff incorporates each of the preceding paragraphs 1 - 42 as if fully set forth herein.

44. Defendants are infringing the '175 Patent literally, or under the doctrine of equivalents, by importing into the United States, and/or making, using, selling, or offering for sale in the United States, including the District of Delaware, products embodying the patented inventions claimed in the '175 Patent without authority, including but not limited to the products identified in preceding paragraphs 19, 25, and 30.

45. Upon information and belief, Defendants have willfully infringed the Patents in Suit by having deliberately engaged in their infringing conduct in knowing disregard of the Patents in Suit and have acted objectively and subjectively reckless in implementing technology

in their products that they knew or should have reasonably known would infringe the Patents in Suit.

46. The infringement by Defendants of the '175 Patent has injured St. Clair.

## COUNT IV

### INFRINGEMENT OF THE '959 PATENT

47. Plaintiff incorporates each of the preceding paragraphs 1 - 46 as if fully set forth herein.

48. Defendants are infringing the '959 Patent literally, or under the doctrine of equivalents, by importing into the United States, and/or making, using, selling, or offering for sale in the United States, including the District of Delaware, products embodying the patented inventions claimed in the '959 Patent without authority, including but not limited to the products identified in preceding paragraphs 19, 25, and 30.

49. Upon information and belief, Defendants have willfully infringed the Patents in Suit by having deliberately engaged in their infringing conduct in knowing disregard of the Patents in Suit and have acted objectively and subjectively reckless in implementing technology in their products that they knew or should have reasonably known would infringe the Patents in Suit.

50. The infringement by Defendants of the '959 Patent has injured St. Clair.

## COUNT V

### INFRINGEMENT OF THE '025 PATENT

51. Plaintiff incorporates each of the preceding paragraphs 1 - 50 as if fully set forth herein.

52. Defendants are infringing the '025 Patent literally, or under the doctrine of equivalents, by importing into the United States, and/or making, using, selling, or offering for sale in the United States, including the District of Delaware, products embodying the patented inventions claimed in the '025 Patent without authority, including but not limited to the products identified in preceding paragraphs 19, 25, and 30.

53. Upon information and belief, Defendants have willfully infringed the Patents in Suit by having deliberately engaged in their infringing conduct in knowing disregard of the Patents in Suit and have acted objectively and subjectively reckless in implementing technology in their products that they knew or should have reasonably known would infringe the Patents in Suit.

54. The infringement by Defendants of the '025 Patent has injured St. Clair.

## COUNT VI

## INFRINGEMENT OF THE '610 PATENT

55. Plaintiff incorporates each of the preceding paragraphs 1 - 54 as if fully set forth herein.

56. Defendants are infringing the '610 Patent literally, or under the doctrine of equivalents, by importing into the United States, and/or making, using, selling, or offering for sale in the United States, including the District of Delaware, products embodying the patented inventions claimed in the '610 Patent without authority, including but not limited to the products identified in preceding paragraphs 19, 25, and 30.

57. Upon information and belief, Defendants have willfully infringed the Patents in Suit by having deliberately engaged in their infringing conduct in knowing disregard of the Patents in Suit and have acted objectively and subjectively reckless in implementing technology

in their products that they knew or should have reasonably known would infringe the Patents in Suit.

58. The infringement by Defendants of the '610 Patent has injured St. Clair and will cause St. Clair added irreparable injury and damage in the future unless Defendants are enjoined from infringing the '610 Patent.

## DEMANDS FOR RELIEF

WHEREFORE, St. Clair respectfully requests that judgment be entered in its favor and against Defendants as follows:

a. That Defendants have infringed the '163, '929, '175, '959, '025, and '610 patents;

b. That Defendants' infringement of the '163, '929, '175, '959, '025, and '610 patents has been willful;

c. That Defendants and their respective agents, servants, officers, directors, employees, and all persons acting in concert with them, directly or indirectly, be temporarily and permanently enjoined from infringement of the '163, '929, and '610 patents;

d. That Defendants be ordered to account for and pay to St. Clair the damages to which St. Clair is entitled as a consequence of the infringement of the '163, '929, '175, '959, '025, and '610 patents, together with pre-judgment interest and costs;

e. That a post-judgment equitable accounting of damages be ordered for the period of infringement of the '163, '929, and '610 patents;

f. That all other damages permitted by Title 35 United States Code § 284, including increased damages up to three times the amount of compensatory damages found be awarded;

g. That St. Clair be awarded its costs and attorneys' fees; and

    h.        That St. Clair be awarded such other and further relief as the Court may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

St. Clair respectfully demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on any and all issues so triable.

November 16, 2010

OF COUNSEL:

R. Terrance Rader
Charles W. Bradley
Glenn E. Forbis
Justin S. Cohen
Rader, Fishman & Grauer PLLC
39533 Woodward Avenue
Bloomfield Hills, MI  48304
(248) 594-0600
rtr@raderfishman.com
cwb@raderfishman.com
gef@raderfishman.com
jsc@raderfishman.com

BAYARD, P.A.

/s/ *Richard D. Kirk*
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
222 Delaware Avenue, Suite 900
P.O. Box 2513 0
Wilmington, DE  19899-5130
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com

*Attorneys for Plaintiff St. Clair Intellectual Property Consultants, Inc.*